FITZGERALD, District Judge,
dissenting:
I respectfully dissent.
I agree with virtually all of the majority’s opinion. I agree that the immigration officer’s failure to inform Mr. Sanchez-Aguilar of his ability to request withdrawal of his application for admission did not violate Mr. Sanehez-Aguilar’s due process rights. I agree that double jeopardy is a question of law that must be resolved by the court, not the jury, even when the defense turns on disputed factual issues. And I agree that, in this case, the government did not prove at trial that Mr. Sanchez-Aguilar had been outside the United States between his 2009 conviction and his arrest for the offense at issue here.
Where I break with the majority is in its reading of United States v. Meza-Villarello, 602 F.2d 209 (9th Cir.1979) (per curiam). In that case, the defendant had been deported in 1971 and convicted of violating Section 1326 in 1975 and again in 1979; the 1979 conviction was the subject of the appeal. Id. at 209-10. The defendant had argued for a jury instruction “tendered upon a double-jeopardy theory,” which the district court rejected. Id. at 210. At trial, the government established that the defendant had been deported in 1971, that he had been convicted of violating Section 1326 in 1975, and that he had been found (without permission) and arrested in the United States in 1978. Id. There was no proof that the defendant had been deported after the 1975 conviction. Id.
“The requested instruction would have told the jury that it could not return a verdict of guilty unless it found beyond a reasonable doubt that the defendant had left the United States under a ‘lawful order of deportation or of voluntary departure’ subsequent to his 1975 sentencing.” Id. The defendant argued that the govern *1113 ment “must prove a separate prior deportation for each new offense of being ‘at any time found in’ the United States.” Id.
This Circuit rejected this theory, but only in part. According to the Mezar-Villarello panel, “We do not believe Congress intended to require a separate official or formal act of deportation to precede each repeated violation of section 1326.” Id. at 211. Stated simply, a single predicate removal can support multiple. Section 1326 convictions — another point on which I agree with the majority in this case.
However, the Meza-Villarello panel continued, “[t]o avoid an unfair prosecution following an arrest at the prison gates, ... the government should be required to prove that the defendant had been outside the United States after each conviction before again prosecuting him for being ‘found’ within the United States in violation of 8 U.S.C. § 1326.” Id; see also United States v. Barraza-Lopez, 659 F.3d 1216, 1217 n. 1 (9th Cir.2011) (“Under [.Meza-Villarello ], ‘the government [is] required to prove that the defendant ha[s] been outside the United States after each conviction before again prosecuting him for being “found” within the United States in violation of 8 U.S.C. § 1326.’ ” (second and third alterations in the original) (citing Meza-Villarello, 602 F.2d at 211)). Again, this language does not necessarily conflict with the majority’s opinion here.
The Meza-Villarello decision then concluded that the “government’s evidence was sufficient to permit the jury to find that after his 1978 arrest [the defendant] gave an address in Mexico as his ‘home’ and that he had admitted to officers that he had ‘crossed’ earlier the day he was arrested. On this record there was no error in refusing the tendered instruction.” Id. at 211 (emphasis added).
Technically, the Meza-Villarello panel did not reach the double jeopardy issue: “We need not reach the double-jeopardy questions that might lurk in this case had there been no evidence of a return to Mexico followed by a renewed presence in the United States after [the defendant’s next most recent conviction.” Id.
In sum, I read Meza-Villarello as setting forth a two-part holding: In any Section 1326 prosecution that follows a prior Section 1326 conviction, (1) there need not have been a separate official or formal act of deportation following the prior Section 1326 conviction; but, (2) the government is required to prove — to the jury beyond a reasonable doubt — that the defendant has been outside the United States since the prior Section 1326 conviction.
That the requested jury instruction in Meza-Villarello was “tendered upon” (i.e., informed by) a double jeopardy theory does not make the, second prong of this rule a question of law for the court. As noted above, the panel in Meza-Villarello explicitly did not reach the double-jeopardy question. If it had reached that question and viewed the resolution as a matter of law, the panel would have written that the “government’s evidence was sufficient to permit” the district court to find that the defendant had been outside the United States after the 1975 conviction. The decision reads otherwise.
Instead, Mezar-Villarello is best understood as follows: In any Section 1326 prosecution that follows a prior Section 1326 conviction, the government must prove to the jury beyond a reasonable doubt that the defendant had left the United States subsequent to the prior conviction. While the government need not necessarily prove a subsequent deportation or removal, there must be evidence sufficient to permit the jury to find beyond a reasonable doubt that the defendant left the United States in the time period following the prior Section 1326 conviction.
*1114 My colleagues on the district court seem to agree with this interpretation of Meza-Villarello. See, e.g., United States v. Perales-Flores, No. CR-05-6049-EFS, 2006 WL 219543, at *1-2 (E.D.Wash. Jan. 27, 2006) (granting Rule 29 motion for judgment of acquittal) (“[I]n view of the absence of any evidence that Defendant ... had been outside of the United States following his 2000 § 1326 conviction, the Court finds the Government failed to prove an essential element of the crime charged: that Defendant had left the United States after being convicted under § 1326 in 2000. Absent proof of Defendant’s departure from the United States, there can be no new conviction for illegal reentry under § 1326.”) (discussing Meza-Villarello, 602 F.2d at 210).
Contrary to the majority’s suggestion, this reading of our prior decision is not in conflict with the precedent that double jeopardy is a question of law for the court. Nor does it create an additional element of the Section 1326 offense. Rather, the panel in Mezar-Villarello simply interpreted the statutory element of Section 1326(a)(2) — specifically, that the defendant “enters, attempts to enter, or is at any time found in, the United States” — in light of the double jeopardy concerns implicated by a subsequent Section 1326 prosecution following a prior Section 1326 conviction. This is not a double jeopardy “question.” It is a question of the government’s burden at trial to present sufficient evidence of an element of the crime, as interpreted by this Circuit in order to avoid the double jeopardy question. See, e.g., United States v. Jinian, 712 F.3d 1255, 1259 (9th Cir.2013) (“We review de novo a district court’s interpretation of a criminal statute and denial of a motion for judgment of acquittal.” (citations omitted)); I.N.S. v. St. Cyr, 533 U.S. 289, 299-300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)(“[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is ‘fairly possible,’ we are obligated to construe the statute to avoid such problems.” (citations omitted)).
According to the majority, the panel in Mezar-Villarello was only making reference to the fact below that the jury did hear certain evidence, without meaning to imply that the matter was necessarily for the jury. In light of the actual issue raised and decided — the propriety of a tendered jury instruction explicitly reviewed on the record of that case — the majority’s reading stretches the text of Mezar-Villar-ello too far. I fail to see why the prior panel would have chosen the language it did unless the issue was understood to be for the jury. Indeed, if the majority’s reading were correct, then the text of Mezar-Villarello should have been virtually indistinguishable from the text of the majority’s current opinion.
As this Circuit has recognized,
In determining whether it is bound by an earlier decision, a court considers not merely the “reason and spirit of cases” but also “the letter of particular precedents.” This includes not only the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected and the views expressed in response to any dissent or concurrence. Thus, when crafting binding authority, the precise language employed is often crucial to the contours and scope of the rule announced.
Hart v. Massanari, 266 F.3d 1155, 1170-71 (9th Cir.2001) (citations omitted).
Mr. Sanchez-Aguilar’s projected release date is July 14, 2013. (See Appellant’s Opening Br. at 3). Practically, the significance of this decision is its explication of a clear rule to guide the government, defendants, and the district courts in future cases. It is now clear that a jury has no role in considering whether, in a subse *1115 quent Section 1326 prosecution, a defendant has left and returned to the United States after his prior conviction. Defense counsel must raise the issue before trial and there is no obligation to instruct the jury. The majority’s rule would have avoided the precise problem that arose below: Neither party raised this issue with the district court, but the defendant can still take advantage of review for clear error. With this case as just one example, the majority’s rule might be a preferable way of dealing with the articulated concerns of fairness and double jeopardy— were we writing on the proverbial clean slate (or empty computer monitor).
Less practical but equally important are the concerns of stare decisis. A prior Ninth Circuit opinion is equally binding on subsequent panels and the district courts. Hart, 266 F.3d at 1171. As a district judge, I would never have refused a properly worded jury instruction in a subsequent Section 1326 trial that followed a prior Section 1326 conviction. In other words, I would have felt bound by the (to me) clear ruling in Meza-Villarello; sitting by designation now, I cannot disregard that ruling.
Accordingly, I would reverse and remand the case with instructions for entry of a judgment of acquittal, based on insufficiency of the evidence.